UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) CAUSE NUMBER 3:08-CR-000145RM |
| | ) |
| ARTHUR CARTER | ) |

OPINION AND ORDER

A team of law enforcement officers came to Arthur Carter's house on Village Road around 8:40 a.m. on November 14, 2008, with a warrant for his arrest for three Class A felony counts of dealing in cocaine. Michigan City Police Officer Bryan Maxey was among the team because he had been involved in the Carter investigation and could identify Mr. Carter. From the front porch, Officer Maxey saw Mr. Carter inside the doorway. Officer Maxey entered the house and arrested Mr. Carter. Officer Maxey saw a green leafy substance in a sandwich bag on an ottoman next to Mr. Carter; Officer Maxey's training and experience led him to believe the substance was marijuana. Officer Maxey also saw a white ziplock bag containing a white residue lying on the floor next to the ottoman.[1]

The officers conducted a protective sweep but found no one else in the home. Mr. Carter refused Officer Maxey's request for consent to search the home. Officers were assigned to secure the home while a search warrant was obtained.

---

[1] Mr. Carter told a very different story about his arrest. His story involved a closed front door, a rushed entry, a Taser, and his son at the door. The court doesn't find Mr. Carter's story credible. It seems likely that such an entry and takedown would have disturbed the furniture and furnishings. The invading officers would have had no basis for knowing what had been where before their rushed entry, and Ms. Willis or her sister surely would have noticed something out of place as they waited for the search warrant.

Two deputy U.S. Marshals waited first. Because it was cold outside, the marshals waited in the home. After 30 to 45 minutes, Officers Arthur Shuts and Kevin O'Malley relieved them and took up the posts inside the house. Officer Maxey contacted the chief deputy prosecutor about a search warrant and was told the judge wouldn't be available until about 10:00 a.m. (a time eventually extended to 11:00).

Officer Maxey and the chief deputy prosecutor went to the Laporte County Superior Court near 11:00 a.m. Officer Maxey told the judge why the law enforcement team was at the Carter house that morning (including the details of the drug sales for which Mr. Carter was being arrested) and what he had seen during the arrest. The judge issued a search warrant for the Village Road home.

While Officer Maxey was absent from the arrest site, Kallie Willis came to the Village Road home with her sister. Ms. Willis owns the home with her mother and lives there. When the officers heard Ms. Willis coming, Officer Shuts stepped into the hallway so as not to be seen (for officer safety). Officer O'Malley opened the door but blocked Ms. Willis's entry, showed his credentials, told Ms. Willis the occupant had been arrested (which she already knew) and a search warrant was on its way, and told her she couldn't enter.

Ms. Willis left and returned, announcing that an attorney told her that she could enter. Officer O'Malley admitted Ms. Willis and her sister, and she spotted Officer Shuts in the hallway. Ms. Willis and Officer Shuts knew each other from activities at the school both their children attend. Ms. Willis told the officers they

2

must leave if they had no warrant; the officers said they weren't lawyers and would have to check into it, then reported that the prosecuting attorney told them they could stay. The officers allowed Ms. Willis and her sister to remain in the home, but followed them whenever they left the living area. The officers conducted no search while the women were there. Officer Maxey arrived with the warrant, and the search began a little after 11:30 a.m.

Mr. Carter moves to suppress the fruits of the ensuing search: suspected crack cocaine and marijuana, cash, scales, and mail in Mr. Carter's name.

There was nothing unreasonable about the search. The entry into the Village Road home was reasonable because the officers had an arrest warrant and much more than a reasonable belief that he was in the home — Officer Maxey saw him. *See, e.g.,* United States v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000). What Officer Maxey saw in plain view during that entry to make the arrest is fair game for an application for a search warrant. Although officers found nothing that gave rise to the search warrant during the protective sweep, the sweep, too, was permissible. Maryland v. Buie, 494 U.S. 325, 337 (1990).

Securing the residence was reasonable, as well. Segura v. United States, 468 U.S. 796, 810 (1984). Police had probable cause to believe the home contained contraband; given the packaging and the marijuana's overt location, police had good reason to fear that one entering the home might destroy the evidence before a warrant arrived; the officers who secured the scene made a reasonable effort to accommodate Ms. Willis, who had her own privacy interest in

3

the home; and the restraint of the residence (about two and a half hours) was imposed for a limited period while the officers acted diligently to obtain and execute the warrant. In <u>Segura</u>, the officers waited inside the secured premises for nineteen hours, an imposition on privacy interests far greater than on Village Road, and the conduct was upheld in <u>Segura</u>. <u>Id.</u>

Importantly, even if the police somehow acted reasonably after Officer Maxey arrested Mr. Carter, no unreasonable conduct tainted the search warrant. The judge who issued the warrant wasn't told anything that occurred from that point forward.

There was no violation of the Fourth Amendment. There is no basis under the law to exclude this evidence. The court denies the defendant's motion to suppress [Doc. No. 18].

SO ORDERED.

ENTERED: <u>February 23, 2009</u>

<u>     /s/ Robert L. Miller, Jr.     </u>
Chief Judge
United States District Court